SAFRANSKI *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT— TESTIMONY INSUFFICIENT TO PRESENT QUESTION OF FELLOW SERVANT'S WILFULNESS.

In an action against a railway company under the Federal employers' liability act, testimony by the plaintiff that the foreman appeared angry and that he believed the foreman's act in suddenly stopping the hand car, on which plaintiff was riding, which resulted in injuring him, was wilful, uncorroborated by any other evidence, did not amount to evidence, and therefore there was no error in the court's refusal to submit the question of wilfulness to the jury.[1]

[1]Master and Servant, 39 C. J. § 1356.
Constitutionality, application and effect of Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 47.

2. SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

Evidence as to defendant's negligence, *held*, sufficient to justify the court in declining to direct a verdict in its favor.[2]

3. SAME—ASSUMPTION OF RISK—QUESTION FOR JURY.

Where, under plaintiff's theory of the evidence, the doctrine of assumed risk did not apply, but under defendant's theory it did apply, while defendant was not entitled to a directed verdict on said question, it was entitled to have it submitted to the jury under proper instructions.[3]

4. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS AS TO ASSUMPTION OF RISK ERRONEOUS.

Where the trial court correctly defined the doctrine of assumed risk, and told the jury what risks the plaintiff assumed, but, instead of informing them that, under the circumstances stated, it would preclude his recovery, left them with the impression that they might use it in determining whether he was guilty of contributory negligence, said instruction was error.[4]

5. SAME—FEDERAL EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE DOES NOT PRECLUDE RECOVERY BUT ASSUMPTION OF RISK DOES.

Contributory negligence is not a defense that will preclude recovery under the Federal employers' liability act, but it may be considered by the jury only in diminishing the plaintiff's damages, but assumption of risk is a distinct defense, that, if established, will bar recovery.[5]

Error to Kent; Brown (William B.), J.    Submitted October 6, 1925.    (Docket No. 1.)    Decided December 22, 1925.    Rehearing denied July 1, 1926.

Case by Anthony Safranski against the Detroit, Grand Haven & Milwaukee Railway Company for personal injuries.    Judgment for plaintiff    Defendant brings error.    Reversed.

*H. R. Martin* (*Leo J. Carrigan,* of counsel), for appellant.

*Charles F. Hext* and *Francis L. Williams,* for appellee.

---

[2]Master and Servant, 39 C. J. § 1319; [3]Id., 39 C. J. § 1418; [4]Id., 39 C. J. §§ 1417, 1418; [5]Id., 39 C. J. §§ 892, 1032.

McDONALD, C. J.     This action is brought under the Federal employers' liability act to recover damages for injuries received by the plaintiff on the defendant's right of way near Lafayette avenue in the city of Grand Rapids, Michigan.     At the time of the injury the plaintiff was 54 years of age and had been employed by the defendant for five years prior thereto as a section hand.     The plaintiff and three other men comprised the section crew, of which one of them, Claude Sheppard, was foreman.     On the day of the accident, after quitting work, they started on a hand car for the tool house where the car and tools were to be stored.     The hand car was of the usual type operated by being pumped by the men and stopped by the use of a brake.     Each of the four men in the crew stood on a corner of the car having hold of the handles of the rocking beam with which they propelled the car.     The plaintiff was standing on a front corner with his back to the direction in which the car was moving.     When the hand car was about 150 feet from the tool house, moving at a speed of between eight and ten miles an hour, the plaintiff claims that the foreman, Claude Sheppard, suddenly and without warning applied the brake in such an abrupt manner as to jerk the car and to cause him to fall off backwards in front of it; that the car continued to move forward and that he ran backwards to avoid being run over, but that he fell down and the car passed over his body, seriously injuring him.     His claim of negligence on the part of the defendant is stated by his counsel in their brief as follows:

"(1) The operation of a hand car in a negligent manner by suddenly and without warning applying the brake with unnecessary violence, causing Safranski, the plaintiff, to be jerked or catapulted backwards off the hand car.

"(2) That after Safranski was thrown off, and while he was running backwards, a distance of some 25 feet, attempting to avoid the oncoming hand car, the defend-

ant negligently failed to stop it before it ran over him when he finally fell on his back between the tracks."

It was the claim of the defendant that the track over which the hand car was being propelled at the time of the accident was wet, and that the foreman Sheppard, in order to slow it down, gradually applied the brake when about 150 feet from the tool house, but that he did so in a mild manner without causing any jerk sufficient to throw plaintiff off; that he was not thrown from the car because of any violent jerk; and that he did not run backwards before the car, but that he fell immediately in front of it and was run over before it could be stopped.     In view of these facts the defendant claims that it was not negligent; that if the plaintiff was injured by reason of any act of its foreman, it was a wilful act for which it would not be liable under the Federal employers' liability law.     At the close of the plaintiff's case and again at the close of all of the proofs the defendant moved for a directed verdict, which motion the court denied.     After the verdict there was a motion for a judgment *non obstante veredicto*, which was also denied.     Upon the denial of a motion for a new trial judgment was entered on the verdict. The defendant brings error.

The record presents 45 assignments of error involving questions as to the admissibility and rejection of testimony, instructions to the jury, failure to give certain requests for the defendant, refusal to direct a verdict or to enter a judgment notwithstanding the verdict or to grant a new trial.     These assignments, for convenience in argument, counsel have summarized in four propositions, the first of which is stated as follows:

"(1) The evidence in this case, viewed in the light most favorable to the plaintiff, does not establish that defendant or its employees, the fellow-servants of the

233—Mich.—21.

plaintiff, were guilty of any negligence which was the proximate cause of the injury."

In discussing this question in their brief, counsel for the defendant urge that the acts upon which the plaintiff relies as constituting negligence were wilful and intentional acts committed by the defendant's servant with a purpose of injuring the plaintiff, and therefore they were not negligent; that the Federal employers' liability act, under which the suit was brought, does not impose any liability on a common carrier for wilful acts, but limits the liability to negligence; that wilful and intentional acts were outside of the scope of the servant's employment, for which his employer could not be held responsible and that, therefore, the circuit judge should have directed a verdict in favor of the defendant.

If it can be said that there was any evidence that Sheppard's acts, which produced plaintiff's injuries, were intentional or wilful, such evidence presented a question for the jury. But though requested, the court refused to submit that question to them. We think that he was right. All of the testimony on the subject came from the plaintiff. Sheppard made positive denial that he was actuated by malice or intentionally did any act to injure the plaintiff. The defendant offered no proof of its claim in this respect but relies on the testimony of the plaintiff, all of which we quote as follows:

"Direct-Examination.

"Q. During that time, Mr. Safranski, had you any friction, an ill-feeling between yourself and Mr. Sheppard?  *  *  *

"A. I don't know. I don't recall.  *  *  *

"Q. Did he or did he not, ever pay or do anything in an ill-mannered, ill-natured way to him while he was working for him?  *  *  *

"A. I don't know.  *  *  *

"Q. Had you ever had any trouble with Mr. Sheppard while you were working for him?

"A. I had no such trouble.  *  *  *

"*Q.* Mr. Safranski, when you were working there these last two months, before your injury, the last one month or so, while Mr. Sheppard was the section foreman, did he ever swear at you?

"*A.* He never said to me 'you are such and such' but he talked very strong. *   *   *.

"*Q.* Was there any such talk on the day that you were hurt?

"*A.* No.

#### "Cross-Examination.

"*Q.* Mr. Safranski, do you claim that Mr. Sheppard put this brake on suddenly so as to wilfully hurt you? *   *   *

"*A.* It seems to me that he did that purposely. *   *   *

"*Q.* Then you think it was Sheppard's intention to put the brake on suddenly and cause you to fall from the car? *   *   *

"*A.* It is so.   I have more to say in answer to that question. *   *   *

"*Q.* Why did Mr. Sheppard do that?

"*A.* I think he was angry at the time.

"*Q.* With whom?

"*A.* Mr. Sheppard appeared angry at the time he pulled this brake, he looked that way.   And he appeared angry with me at that time."

What the plaintiff believed, what appeared to him to be Sheppard's state of mind or feeling, is not evidence.   He stated no facts from which the jury would have been warranted in concluding that Sheppard's acts were wilful or intentional.   The court did not err in refusing to submit the question to the jury.

As to the defendant's negligence there was ample evidence to justify the court in declining to direct a verdict in its favor.

The defendant's second proposition is that

"Plaintiff assumed the risk of the injury received, as a matter of law, and the trial judge should have directed a verdict in favor of the defendant."

The court was right in refusing to direct a verdict for the defendant on the ground that plaintiff had assumed the risk incident to his employment.   Under

the plaintiff's theory of the evidence, the doctrine of assumption of risk did not apply.   Under the defendant's theory it did apply.   The defendant was entitled to have the jury instructed on that question, but was not entitled to a directed verdict.   The requests submitted by the defendant were properly refused, but we think the instructions in the charge as given in respect to assumption of the risk were erroneous.   Whenever he touched upon the subject the court correctly defined the doctrine and told the jury what risks the plaintiff assumed, but instead of informing them that, under the circumstances stated, it would preclude the plaintiff's recovery, he left them with the impression that they might use it in determining whether he was guilty of contributory negligence.   We have reference to the following quotations from the charge:

"So a person in riding upon the car, who understands it, who is used to it, who has had experience in riding upon it, whether he rides backwards or forwards, or however the car may go, he rides there subject to such risks as are incident to that kind of employment when the hand car is operated in the usual and the expected manner.   Whether the brakes are put on with some abruptness to get to where they want to stop, or whether the stops are long and gradual, whatever the usual and the accustomed and expected method is, that is the operation that the person riding upon the car assumes the risk of, and must take such care as is necessary in accordance with the risk, the known risk, and danger incident to his riding there in order that he shall not be guilty of contributory negligence in case he should be injured.   *   *   *

"The evidence in this case discloses that the plaintiff, Anthony Safranski, is a section man of mature years, and at the time of the accident had been employed by the defendant, the railroad company, for about five years, on this same railroad section, on which he was injured.   From experience he was aware of the danger necessarily attendant upon riding backwards or otherwise upon a hand car with tools on the platform of the car, and appreciated the risk

attributable to such circumstances and knew the general effects of the application of the brakes as they were applied in the ordinary or usual manner in stopping the hand car while so riding, and he voluntarily continued in the employment of the railroad company at this employment without objection, or without obtaining from the railroad company or its representatives an assurance that such risk would be compensated by them in case he suffered injury from any of these risks.

"If a person, who works under such circumstances and conditions, gets injured, under the ordinary conditions of the employment or of the nature of the employment, by reason of his own negligence or carelessness, and to which no one else contributes by negligent conduct, then he cannot recover."

Standing alone there is nothing objectionable in the last paragraph of this instruction, but when used in the connection in which it was used it made assumption of the risk depend upon the plaintiff's negligence, and the lack of negligence on the part of the defendant.

"The principle which prevents recovery when an employee has assumed the risk should not be confounded—though it sometimes is—with the principle which prevents recovery when he himself is negligent, or when his employer is free from negligence. If the principle of assumed risk—as many seem to suppose—has application only to cases in which the employer would be held free from liability either on the ground that he has not been negligent or on the ground that the employee has been guilty of contributory negligence, it must be confessed that it is a principle of no great importance." * * * *  *Bradburn* v. *Railroad Co.*, 134 Mich. 575.

Contributory negligence is not a defense that will preclude a recovery under the Federal act, but may be considered by the jurors only in diminishing the plaintiff's damages. Assumption of the risk is a distinct defense that will bar a recovery. If the facts were as the defendant claimed, the plaintiff could not recover because of assumption of the risk. Nowhere in the charge as given did the court so inform the

jury. By instructing them that they could use assumption of risk in determining the plaintiff's negligence, and not instructing them that it could be otherwise considered, and by making assumption of the risk depend on negligence, he deprived the defendant of the benefit of its principal defense. We think that the charge of the court in respect to assumption of risk was erroneous and must have misled the jury to the defendant's prejudice. For this error the judgment must be reversed.

As the other questions presented are not likely to arise on a second trial we do not discuss them.

The judgment is reversed and a new trial granted. The defendant will have costs.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.

### ON MOTION FOR REHEARING.

McDONALD, J. In our opinion, in this case, we quoted a portion of the charge to the jury and held that it was erroneous in that it made the assumption of risk depend upon negligence. On a motion for a rehearing our attention is called to the fact that there is no assignment of error on the judge's charge. However, error is assigned on the refusal to give the defendant's 6th request which properly states the law of assumed risks. It or its equivalent should have been given. The portion of the charge quoted in the opinion shows that plaintiff's claim that the charge properly covered the question of assumed risk is not sustained. The circuit judge erred in refusing to give the 6th request or its equivalent.

In respect to these matters the opinion is modified and the motion for rehearing denied.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.

Justice MOORE took no part in this decision.